IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| JOYCE JOCELYN GONZALEZ, | : | Case No. 1:23-cv-547 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| DENISON OFFUTT, Deputy Chief of Mission, U.S. Embassy in Saudi Arabia, et al., | : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 9)**

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 9). Plaintiff filed a Response in Opposition (Doc. 10), to which Defendants filed a Reply in Support (Doc. 11). Thus, this matter is ripe for the Court's review. For the reasons below, Defendants' Motion to Dismiss (Doc. 9) is **GRANTED**.

**FACTS**

In September 2021, Plaintiff, a U.S. Citizen, filed an I-129F Petition for Alien Fiancé with the United States Citizenship and Immigration Service ("USCIS") for her non-citizen fiancé. (Compl., Doc. 1, ¶¶ 10, 16.) USCIS approved the petition in January 2021. (*Id.* at ¶ 17.) In April 2023, the U.S. Embassy in Saudi Arabia interviewed Plaintiff's fiancé as a part of the subsequent processing for his visa application. (*Id.* at ¶ 19.) Following, USCIS refused Plaintiff's fiancé's application under § 221(g) of the Immigration and Nationality Act ("INA") and placed it in administrative processing. (*Id.* at ¶¶ 20-21.) While USCIS

has taken no further steps to adjudicate Plaintiff's fiancé's application, USCIS continues to retain jurisdiction over it. (*Id.* at ¶¶ 4, 22.) And, though Plaintiff and her fiancé have inquired as to the status of the application, they have received "no meaningful responses." (*Id.* at ¶ 22.)

USCIS' delay in adjudicating Plaintiff's fiancé's visa application has caused Plaintiff to suffer personal and financial hardships. (Compl., Doc. 1, ¶¶ 6-9.) Plaintiff experiences anxiety and depression over the matter, which impact's Plaintiff's son. (*Id.* at ¶ 7.) And, the delay has impacted the couple's relationship by, among other things, creating uncertainty on their ability to have children. (*Id.* at ¶ 8.) Because of this uncertainty, Plaintiff has invested and may continue to invest in fertility treatment. (*Id.* at ¶ 9.) Further, the delay is impacting both Plaintiff and her finance's employment. (*Id.* at ¶ 8.)

On August 31, 2023, Plaintiff sued Denison Offutt, the Deputy Chief of Mission for the United States Embassy in Saudi Arabia, and Antony Blinken, the Secretary of the United States Department of State. (*See* Compl., Doc. 1.) Plaintiff brings claims for unreasonable delay under the Administrative Procedure Act ("APA"), mandamus relief, and a due process violation under the Fifth Amendment. (*Id.* at ¶¶ 23-39.)

## LAW & ANALYSIS

Defendants move to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Motion to Dismiss, Doc. 9.) The Court will first consider Defendants' Motion as it applies to Rule 12(b)(1).

2

I. **Motion to Dismiss Under Rule 12(b)(1)**

Defendants first argue that this Court lacks subject matter jurisdiction over Plaintiff's APA and mandamus relief claims. (Motion to Dismiss, Doc. 9, Pg. ID 52-57.) Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction by raising a facial attack or a factual attack. *Golden v. Gorno. Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). Defendants bring a facial attack. (*See* Motion to Dismiss, Doc. 9.) A facial attack "questions merely the sufficiency of the pleading" in alleging subject-matter jurisdiction, and the Court takes the allegations raised in the complaint as true. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The plaintiff bears the burden of proving that jurisdiction is proper. *Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

"When a petitioner seeks both mandamus relief and relief under the APA, courts apply the same principles and standards [] to determine jurisdiction." *Nelson v. United States*, 107 F. App'x 469, 471 (6th Cir. 2004). To invoke jurisdiction under the APA, a plaintiff must show that (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty. *See Garcia v. United States Dep't of Homeland Sec.*, 25 F.4th 430, 441-42 (6th Cir. 2022) (citations omitted). "Mandamus jurisdiction is available only if (1) the plaintiff has exhausted all available administrative appeals and (2) the defendant owes the plaintiff a 'clear nondiscretionary duty' that it has failed to perform." *Your Home Visiting Nurse Servs. v. Sec'y of HHS*, 132 F.3d 1135, 1141 (6th Cir. 1997) (citation omitted). "Thus, for jurisdiction to lie under both the APA and

3

Mandamus Act, [] Plaintiff must show that USCIS owed a non-discretionary duty to [her] and that it failed to act upon this duty." *Muminov v. Sessions*, No. 1:18-CV-1034, 2018 U.S. Dist. LEXIS 183479, at *9 (N.D. Ohio Oct. 24, 2018). Defendants raise issue with both prongs. (*See* Motion to Dismiss, Doc. 53-57.)

### a. Nondiscretionary Duty

Defendants first argue that this Court lacks subject matter jurisdiction over Plaintiff's APA and Mandamus Act claims because Defendants do not have a nondiscretionary duty to act. (Motion to Dismiss, Doc. 8, Pg. ID 53-57.) In response, Plaintiff maintains that Defendants—through USCIS—have a nondiscretionary duty to adjudicate Plaintiff's fiancé's visa application within a reasonable time. (Response, Doc. 10, Pg. ID 74-76.)

The Sixth Circuit has not addressed whether USCIS has a nondiscretionary duty to timely act on visa applications generally. And, as discussed below, courts within this circuit have reached varying conclusions on whether such a duty exists. In reaching their conclusions, courts appear to consider the type of application at issue and its associated statutory or regulatory language.

For example, this Court has determined that USCIS has a duty to act on a visa application that was initiated by an I-130 Petition for Alien Relative. *Alwan v. Risch*, No. 2:18-CV-0073, 2019 U.S. Dist. LEXIS 53692, at *6-7 (S.D. Ohio Mar. 29, 2019). In reaching this conclusion, the Court relied on 22 C.F.R. § 42.81(a), which states that "when a visa application has been properly completed and executed before a consular officer . . . , the consular office must either issue or refuse the visa." Because the regulation states that a

4

consular office must act, the Court found that USCIS had a nondiscretionary duty to act on the relevant visa application. *Alwan*, 2019 U.S. Dist. LEXIS 53692, at *7.

Also relevant are courts' varying conclusions on the duty to act on an I-485 Application to Register Permanent Residence or Adjust Status. Some courts in this circuit have found that there is no duty to act on an I-485 visa application within a reasonable time. *See, e.g., Yongli Xu v. Gonzales*, No. C-3-07-203, 2007 U.S. Dist. LEXIS 71038, at *18 (S.D. Ohio Sept. 25, 2007). Those courts base their finding on statutory language that affords the Attorney General discretion to adjust the status of an alien. *Id.* at *16-18; *see* 8 U.S.C. § 1159(n) (An alien's status may be adjusted "in the Secretary's or the Attorney General's discretion."); 8 U.S.C. § 1255(a) (An alien's status may be adjusted by "the Attorney General, in his discretion."). Though, other courts have found that this discretionary language refers only to the Attorney General's "ultimate decision on the merits of an I-485 application." *Tang v. Chertoff*, No. 07-203, 2007 U.S. Dist. LEXIS 64022, at *12 (E.D. Ky. Aug. 29, 2007). Under this interpretation, some courts have determined that there is a duty to act on an I-485 application within a reasonable time. *See, e.g., id.* at *12 ("[USCIS] has a non-discretionary duty to reach its decision on an I-485 application, whatever that decision may be, within a reasonable time.").

Like the aforementioned visa applications, statutory and regulatory language provide guidance on the duty to act on the application at issue here. The INA "governs visa processing and 'confers upon consular officers [the] exclusive authority to review applications for visas.'" *Alwan*, 2019 U.S. Dist. LEXIS 53692, at *6 (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.D.C. 1999)). "A consular office is required by law to act

5

on visa applications." *Id.* (quoting *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997)). "Likewise, 22 C.F.R. § 42.81(a) mandates that 'when a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular office must either issue or refuse the visa.'" *Id.* at *6-7. Based on this mandatory language, as well as the requirement that agencies conclude matters presented to them "within a reasonable time" pursuant to 5 U.S.C. § 555(b), USCIS has a nondiscretionary duty to act on Plaintiff's fiancé's visa application within a reasonable time. *See id.*; *see also Tang*, 2007 U.S. Dist. LEXIS 64022, at *10-12.

The case cited by Defendant in opposition does not change this Court's finding. (*See* Motion to Dismiss, Doc. 9, Pg. ID 56-57.) In *Beshir*, the District Court for the District of Columbia found that there was no duty to act on an I-485 visa application within a reasonable time. *See Beshir v. Holder*, 10 F. Supp. 3d 165, 173 (D.D.C. 2014). Like some courts in the Sixth Circuit, the *Beshir* court relied on the discretionary language related to the Attorney General's power to adjust an alien's status. *See id.* However, the case at bar is distinguishable. Not only is the application here different, but Defendants have not pointed to any statutes or regulations associated with this type of application with the same discretionary language. (*See* Motion to Dismiss, Doc. 9.)

USCIS has a nondiscretionary duty to act on Plaintiff's fiancé's visa application within a reasonable time. The first jurisdictional requirement has therefore been met.

### b. Failure to Act

Next, Defendants maintain that, even if there is a duty to act on Plaintiff's fiancé's

6

visa application, USCIS has done so through its refusal of the application under § 122(g) of the INA. (Motion to Dismiss, Doc. 9, Pg. ID 56-57.) This argument sounds in the doctrine of consular nonreviewability, which "holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno*, 197 F.3d at 1159; *see also Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972). In response, Plaintiff maintains that the refusal was not a final decision by USCIS because, following refusal, the application was immediately placed in administrative processing for further review. (Response, Doc. 10, Pg. ID 77-79.)

The Sixth Circuit has not addressed whether consular nonreviewability applies to a refusal of a visa application under § 122(g). And, courts within this circuit have reached differing conclusions on the issue. *Cf. Saad v. Risch*, No. 18-CV-12074, 2019 U.S. Dist. LEXIS 137781, at *4-8 (refusal under § 221(g) was a final determination on visa application); *Alwan*, 2019 U.S. Dist. LEXIS 53692, at *2-7 (visa application placed in administrative processing not final decision). These courts, however, did not articulate their reasoning for reaching contrasting conclusions.

Fortunately, decisions from outside of this circuit provide guidance. The District Court for the District of Colombia has found that the refusal of a visa application under § 122(g) is not a final decision when that application is later placed in administrative processing. *See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 283 (D.D.C. 2016). In reaching this conclusion, the court considered the Departments of State and Homeland Security's practices and statements about administrative processing. *Id.* at 284-86. The Departments therein

7

identified administrative processing as a required and intermediary step in the visa application process. *Id.* The court also considered the fact that visas placed in administrative processing—unlike those that were completely denied—are not reported to Congress. *Id.* at 289. Relying on this information, the court concluded that a refusal under § 122(g) was not a final decision when the visa application was later placed in administrative processing. *Id.* at 291. In turn, the doctrine of consular nonreviewability did not apply. *Id.*

The Court finds the District Court for the District of Columbia's reasoning in *Nine Iraqi* persuasive. Though USCIS refused Plaintiff's fiancé's visa application under § 122(g), it immediately placed it in administrative processing for further review. (Compl., Doc. 1, ¶ 20.) "It is reasonable to infer that under this process that [the] forthcoming decision is actually the final adjudication of [the] visa application, and not a re-adjudication." *Kiani v. Blinken*, No. 23-CV-5069, 2024 U.S. Dist. LEXIS 33887, at *15 (C.D. Cal. Jan. 4, 2024). The secondary materials discussed in the *Nine Iraqi* decision only reinforce that inference. *See Nine Iraqi*, 168 F. Supp. 3d at 284-86. In turn, because Plaintiff's fiancé has yet to receive a final adjudication on his application, the consular nonreviewability doctrine does not apply. Thus, the second jurisdictional prong has been met.

\* \* \*

This Court has subject matter jurisdiction over Plaintiff's APA and mandamus relief claims. Defendants—through USCIS—have a nondiscretaionary duty to act on Plaintiff's fiancé's visa application within a reasonable time. Defendants have failed to do

so. Thus, the jurisdictional requirements of the APA and Mandamus Act have been met and this Court has subject matter jurisdiction over these claims.

### II. Motion to Dismiss Under Rule 12(b)(6)

Having found jurisdiction over this matter, the Court now turns to Defendant's motion to dismiss this case under Rule 12(b)(6). (Motion to Dismiss, Doc. 9, Pg. ID 57-67.) The Federal Rules of Civil Procedure allow, upon motion, the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the plaintiff's cause of action as stated in a complaint. *Golden*, 404 F.3d at 958. A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, the complaint must lay out enough facts for a court to reasonably infer that the defendant wronged the plaintiff. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). Courts accept all allegations of material fact as true and must construe such allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 554-55; *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). However, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555.

As noted above, Plaintiff brings claims for unreasonable delay under the Administrative Procedure Act, mandamus relief, and due process violation under the Fifth Amendment. (Compl., Doc. 1, ¶¶ 23-39.) Defendants move to dismiss all of these claims. (*See* Motion to Dismiss, Doc. 9, Pg. ID 57-67.) The Court will consider each claim in turn.

9

### a. APA Claim

First, the Court considers Plaintiff's unreasonable delay claim under the APA. (*See* Compl., Doc. 1, ¶¶ 23-27.) Defendants argue that this claim should be dismissed because Plaintiff has not alleged an unreasonable delay. (Motion to Dismiss, Doc. 9, Pg. ID 58-66.)

The APA allows the Court to compel agency action that has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). To determine whether an agency's delay in taking required action is unreasonable, the Court applies a six-factor test. *See Garcia*, 25 F.4th at 451-52 (quoting *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984)). The Sixth Circuit has described these *TRAC* factors as follows:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.*

Plaintiff maintains that the Court cannot consider the *TRAC* factors at the pleading stage. (Response, Doc. 10, Pg. ID 79-80.) To be sure, "[a] claim of unreasonable delay is

10

necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage." *Garcia*, 25 F.4th at 451 (quotation omitted). That said, courts within this circuit have routinely considered the *TRAC* factors at the motion-to-dismiss stage when the pleadings provide enough information to analyze the relevant factors. *See, e.g., Preston v. Ky. Consular Ctr.*, No. 6:22-CV-15, 2022 U.S. Dist. LEXIS 150019, at *59-75 (E.D. Ky. Aug. 22, 2022) (considering *TRAC* factors at motion-to-dismiss stage); *Telukunta v. Mayorkas*, No. 2:21-CV-10372, 2021 U.S. Dist. LEXIS 111676, at *4-8 (E.D. Mich. June 15, 2021) (same); *Cf. Escalona v. United States Dep't of Homeland Sec.*, No. 1:20-CV-613, 2021 U.S. Dist. LEXIS 234020, at *16-18 (W.D. Mich. Aug. 23, 2021) ("The Court anticipates that some discovery may be required to fully vet the considerations the *TRAC* factors raise."). As shown below, Plaintiff's Complaint (Doc. 1) contains sufficient facts to permit this Court to consider the *TRAC* factors at the pleadings stage. The Court will consider the *TRAC* factors accordingly.

**Factors One and Two.** "The first *TRAC* factor—that the time agencies take to make decisions must be governed by a rule of reason—is considered the most important." *Ebrahimi v. Bitter*, No. 3:22-CV-788, 2023 U.S. Dist. LEXIS 98199, at *13 (M.D. Tenn. June 6, 2023) (citation omitted). The second *TRAC* factor asks whether Congress has provided a timetable that "may supply content for this rule of reason." *TRAC*, 750 F.2d at 80. The Court may review these factors in tandem. *Ebrahimi*, 2023 U.S. Dist. LEXIS 98199, at *13.

"The inquiry centers on whether the agency's response time . . . is governed by an identifiable rationale." *Ebrahimi*, 2023 U.S. Dist. LEXIS 98199, at *13 (citation omitted). "[T]he State Department employs a 'first-in, first-out' methodology for processing visa

11

applications, and courts have uniformly concluded that this methodology satisfies the rule of reason." *Id.* (collecting cases).

Nevertheless, Plaintiff argues that 8 U.S.C. § 1571(b) mandates a 180-day window for USCIS to adjudicate a visa application, which has not been met for Plaintiff's fiancé's application. (Response, Doc. 10, Pg. ID 82-84.) This argument lacks merit. Section 1571(b) states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing." As several courts have found, this provision "lacks any compulsory language to interpret it as a legal requirement." *Telukunta*, 2021 U.S. Dist. LEXIS 111676, at *5-6 (collecting cases). Thus, the Court cannot give § 1571(b)'s timeline binding effect here.

That said, "courts often look to the length of delay as a rough yardstick to determine whether the first-in, first out rule is actually being applied." *Ebrahimi*, 2023 U.S. Dist. LEXIS 98199, at *14. "[T]he question is not whether a length of time is unfair in some loose, equitable sense, but rather whether the delay is caused by a rule of reason and the resources available to the agency." *Id.* at *16 (citation omitted). Plaintiff has not alleged any facts suggesting that the first-in, first-out rule is not being applied to her fiancé's application. (*See* Compl., Doc. 1.) And, courts in this circuit have provided greater flexibility to the time to adjudicate visa applications filed during the COVID era. *See Ebrahimi*, 2023 U.S. Dist. LEXIS 98199, at *14 (collecting cases). Plaintiff filed her I-129F petition in September 2021. (Compl., Doc. 1, ¶ 2.) So, the delay here is not unreasonable, "particularly given the inference of a global pandemic and the State Department's efforts to deal with the resulting backlog of visa applications." *Id.*; *see also Hosseini v. Napolitano*,

12

12 F. Supp. 3d 1027, 1035 (E.D. Ky. Apr. 3, 2014) ("[C]ourts have found delays of four years or less to be reasonable.").

Thus, the first and second *TRAC* factors favor Defendants.

**Factors Three and Five.** The third and fifth *TRAC* factors address the delay's effect on the visa applicant. Under the third factor, the Court must consider that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." *TRAC*, 750 F.2d at 80. The fifth factor "take[s] into account the nature and extent of the interests prejudiced by delay." *Id*. The analysis of these factors often overlaps. *Telukunta*, 2021 U.S. Dist. LEXIS 111676, at *6 (citation omitted).

Plaintiff asserts that the delay in the adjudication of her fiancé's visa application has harmed both her professional and personal life. (Response, Doc. 10, Pg. ID 84.) Plaintiff "may be forced into expensive fertility treatment . . . , her mental health has been materially harmed, and her career prospects are threatened because of her declining mental health." (*Id*.)

While the Court acknowledges the seriousness of Plaintiff's alleged hardships, they "are interests shared by virtually every applicant whose visa application has been delayed." *Ebrahimi*, 2023 U.S. Dist. LEXIS 98199, at *17. Visa processing "is inherently a zero-sum game, as processing one category of immigrant visas necessarily results in the diminished resources for processing another category of visas." *Preston*, 2022 U.S. Dist. LEXIS 150019, at *69 (quotation omitted). Resultantly, Plaintiff's hardships "do not weigh strongly or override the others that weigh against [her], particularly in light of the fact

13

that bumping [Plaintiff's fiancé] to the head of the line would simply increase the delay for someone else in a similar personal, financial, and political situation." *Ebrahimi*, 2023 U.S. Dist. LEXIS 98199, at *17.

Because Plaintiff's situation presents health and welfare stakes, but the requested remedy "functions to the detriment of other [] visa applicants," the Court finds that factors three and five are neutral. *Preston*, 2022 U.S. Dist. LEXIS 150019, at *70; *see also Mashpee Wamanag Tribal Council, Inc.*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("[W]e refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.").

**Factor Four.** The fourth *TRAC* factor requires the Court to "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. "The practical effect of granting Plaintiff relief would allow her [fiancé] to cut to the front of an already-long line of visa applicants." *Telukunta*, 2021 U.S. Dist. LEXIS 111676, at *7. "Allowing Plaintiff['s fiancé] to cut the line would create a zero-sum game that delays the adjudication of visa applicants already ahead of Plaintiff['s fiancé] in the queue." *Id.* (citing *Patel v. Cuccinelli*, No. 6:20-CV-101, 2021 U.S. Dist. LEXIS 3793, at *10 (E.D. Ky. Jan. 8, 2021) ("Moving any application to the front of any line for processing would necessarily move others in that line back a space.")). "Indeed, the Sixth Circuit has declined to find unreasonable delay due to a 'general backlog' of visa applications and noted that 'plaintiffs cannot jump the line by simply requesting mandamus or other relief.'" *Id.* (quoting *Hussein v. Beecroft*, 782 F. App'x 437, 443-44 (6th Cir. 2019)). Thus, the

fourth *TRAC* factor favors Defendants.

**Factor Six.** The sixth *TRAC* factor notes that the Court "need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80. Plaintiff does not allege that impropriety is the cause of "agency lassitude." (*See* Compl., Doc. 1.) As a result, both parties agree that this factor is neutral and should not impact the Court's analysis. (*See* Motion to Dismiss, Doc. 9, Pg. ID 66; Response, Doc. 10, Pg. ID 82.)

\* \* \*

The *TRAC* factors ultimately favor Defendants. In turn, Plaintiff has failed to state a claim of unreasonable delay under the APA. *See Telukunta*, 2021 U.S. Dist. LEXIS 111676, at \*8 (citation omitted) ("Delay alone, without other circumstances of unreasonableness, is not the unreasonable delay required . . . under the APA."). Because Plaintiff has not alleged an unreasonable delay, her APA claim must fail.

### b. Mandamus Relief Claim

The Court next considers Plaintiff's claim for mandamus relief, wherein Plaintiff requests that this Court compel Defendants to adjudicate Plaintiff's fiancé's visa application because they have failed to do so within a reasonable time. (*See* Compl., Doc. 1, ¶¶ 28-34.) Defendants argue that this claim should be dismissed because Plaintiff has failed to demonstrate a right to relief. (Motion to Dismiss, Doc. 9, Pg. ID 57-58.) Plaintiff fails to address or counter this argument in her response. (*See* Response, Doc. 10.) "Where a party fails to support its claim in a brief opposing a motion to dismiss, district courts are free to treat those claims as abandoned and dismiss them." *Pierre Invs., Inc. v. Fifth*

*Third Bancorp*, No. 1:22-CV-155, 2022 WL 6764494, at *5 (S.D. Ohio Oct. 11, 2022), *aff'd*, No. 23-3269, 2022 U.S. Dist. LEXIS 186170 (6th Cir. Dec. 4, 2023); *see also Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007).

But, even if Plaintiff had not abandoned this claim, it would nevertheless fail. Where, as here, "the relief sought by [Plaintiff] through a writ of mandamus is essentially the same as that sought under the APA, the court may consider the claim under the APA" standard. *Singh v. Mayorkas*, No. 3:23-CV-527, 2024 U.S. Dist. LEXIS 19547, at *6 (M.D. Tenn. Feb. 5, 2024) (citation omitted). Because Plaintiff's APA claim fails, her "mandamus action alleging unreasonable delay necessarily fails as well." *Ebrahimi*, 2023 U.S. Dist. LEXIS 198199, at *19 (citations omitted). Thus, Plaintiff's claim for mandamus relief must be dismissed.

### c. Fifth Amendment Due Process Claim

Finally, the Court considers Plaintiff's Fifth Amendment due process claim against Defendants. (*See* Compl., Doc. 1, ¶¶ 35-39.) Defendants move to dismiss this claim, arguing that Plaintiff has not identified any violation of a protected liberty. (Motion to Dismiss, Doc. 9, Pg. ID 66-67.) Plaintiff does not address or respond to this argument (*see* Response, Doc. 10), so this claim is abandoned. *Pierre Invs., Inc.*, 2022 U.S. Dist. LEXIS 186170, at *5. Regardless, this claim likely fails on the merits. The Sixth Circuit has found that "American residents—whether citizens or legal residents—do not have a constitutional right to require the National Government to admit noncitizen family members into the county." *Baaghil v. Miller*, 1 F. 4th 427, 433 (6th Cir. 2021). "The same holds true for spouses." *Id.* Thus, Plaintiff's Fifth Amendment due process claim must

also be dismissed.

## CONCLUSION

Based on the foregoing reasons, Defendants' Motion to Dismiss (Doc. 9) is **GRANTED**. Plaintiff's Complaint (Doc. 1) is **DISMISSED** under Rule 12(b)(6) for failure to state a claim. This case is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND